If the parties to the Johnson case could please come up and be seated at the tables behind me while I call the case, it's three related appeals in re. Johnson, Brenda M. Johnson, appellant is appearing pro se. We have counsel present for this case. We have counsel present for four of the appellees. I believe they have agreed amongst themselves that two of them are going to argue. Mr. Alan Smith is present for Albertson Companies, Inc. Ms. Jane Pearson is present for Equifax Information Services. Tara Schleicher is present for Appalachia Puyallup Tribal Gaming Enterprises, Inc. and Dena Yonker is present for the State of Washington Appalachians. And I believe Jane Pearson and Dena Yonker are the two who are going to argue today on behalf of all the appellees. Thank you very much. Before I ask the appellant, Ms. Johnson, to begin her remarks, let's just confirm that so we know how the parties, the appellees, wish to spit their time. Thank you, Your Honor. Dena Yonker for the State of Washington. I would request seven minutes to discuss the final dismissal order and would then like to turn the floor over to my colleague, Jane Pearson, to discuss the vexatious litigant order. Thank you very much. Jane Pearson and Paul Sinelli for Equifax Information Services. I'd like five minutes. I'll be addressing the question of whether the bankruptcy court erred by entering a vexatious litigant order. All right. Thank you very much. And I apologize, Your Honor. I just want to state that this is Ruby Navadine and I'm here on behalf of the U.S. government. I apologize. Judge Springer, I could not hear any of what was just said because they weren't at a microphone. No problem. I think you need to be by the mic and I'm happy to repeat it and make sure I got it right. But from what I am told, Ms. Yonker will go first and argue for seven minutes regarding the final dismissal order and then yield to Ms. Pearson to discuss the vexatious litigant order, which she estimates is about five minutes. Then we'll see where it goes from there. All right. Thank you. Ms. Johnson, then you're invited to approach the podium and begin. And when you do, I'll ask you if you want to reserve any time to make a reply. You can reserve as much as you want or none at all. Okay. Would you like to reserve any time? Yes, about 15 minutes. Well, you have 15 minutes. And I should say that there are three appeals the panel has discussed and they overlap substantially. So you have 15 minutes to make your argument. If you want to reserve any time for reply after they proceed to reply to what they have said, you can reserve as much or as little time as you want. Please approach the podium. Yeah, you need to be by the mic at this point. Sorry. So are you asking me to tell you like seven or ten minutes? Yes. Okay. Well, it's three of them, correct? So that's five each. But you're getting a total of 15 minutes. So from that you have to subtract whatever time you want for reply. Three, five. And then a light will come on as yellow at that time to tell you you're running into your rebuttal time if you go beyond it. So we're just trying to get the parameters worked out. Okay. All right. Would you like any time? Five minutes. Sure. Okay. And you're responsible. We will try and let you know if we get to the five minutes. All right. Thank you, sir. You may proceed. Okay. First off, it is my understanding by law that a dismissal is by the plaintiff. I am the plaintiff. I did not agree, settle any disputes. I call it fraudulent. For the representatives to present this information, evidence has been supplied. The defendants have not answered the complaint timely. If you look at one through two, the summons and complaint, and then you have six through seven. And it has several plaintiffs, I mean defendants. They didn't even exhibit form 41. There was not a trustee refusal for my case. Exhibit two, motion to voluntary dismiss an appeal. There was none for that, and they have the same in district court where the plaintiffs were supposed to, I mean me voluntarily dismissing a case because of some type of different settlement. Well, there's no payments. There were injuries. They, in title five, under 90, what do you call it, docket number 98, which shows title five that there was some incidents in my complaint that caused harm by withholding pay as a clemency saying that I am a whistleblower and that under the definition under law I can, I'm still employed. The plaintiffs never objected to that. The plaintiffs never denied, admitted, or I have no knowledge of this. They are no different than you, me, or anyone else in this room. They have to abide by the laws, being that they do this on a daily basis, it would be injustice. If everyone in this room gets paid, I deserve to get paid. So basically it's withholding funds from a person that has worked and not received. I have went to the National Labor, so Albertsons, for example. They were a defendant. They had an attorney. The attorney did not answer. Those are trial, saying you want to go to trial. And the incident from Jesse, I have a showing with WSDOT as an employee. It shows no one made, at Pierce County, made any objections. I had two witnesses. So these are, they held those funds. I got an offer to sue, in which I did. They are not here to defend themselves, but they didn't object. But the state of Washington was there, Bob Robertson. He gave me a notice of appearance. A joint order and joint notice participant. An order was not never, is not on the docket, saying that the parties are joint and can file together. There's none. These are fraudulent, and they're basically calling themselves, pulling the wool over my eyes, is what I can say. The defendants have not answered the complaint. So when I amended it, trying to appease the court, each time they asked me, I just went ahead and did it, instead of arguing with the judge. But those were requested of me, and therefore, I went ahead and amended the complaint. Because there's always, there's correct, there are people that have done some things, and I can call that as a assistant in trying to, almost like a soap, on a protected employee. You may not dismiss, you may not cut hours, you may not take adverse actions. These are all things that I was protected under, and each litigant chose willingly to do the opposite. They gave you a transcript. So the judge on here says, Brenda, you do have, you can amend. So they keep wanting me to change to give the defendants more time. If you look from when this first opened, document one, from the current time, there's no answer to the complaint. No, not one. They just waved their hands. Also, a victim has a right to be, to see, just like we are in this court, to see the person that is causing them harm. With this, it shows there was only telegraph, meaning that there was only auto. So they didn't even actually appear. They haven't actually appeared, by law, a default judgment. I put in a request for an entry judgment, and those were, that's the reason why. And then I put in the entry for default, being that they did not address the question. So being vexes, if you look at 98, I'm the one that put that they're vexing, because they have not answered the question. The questions, even Mr. Zeb from the attorney's general office, he, I had a case with him, he even answered. It wasn't all correct, but he even answered, yes, I have knowledge, no, I deny. So can you please, court, I ask you, can you tell me what is the difference without telling me the law? Because the law says they're supposed to answer those questions, either they're truthful or they're not. I have evidence to neglect what they're saying, to try to dismiss, and what that is, is obstruction of justice. A waste of taxpayer's money, because they've been knowing this for some time. I've been asking for a trial, they have denied me a trial, because of the fraud, under the Title V, I can have a jury. But they haven't answered, so they've denied me that right. Because that would come before the people of the United States. Why does not, why are they, even our presidents and ex, former presidents, even they are being held at a standard. Are they better than our presidents of the United States? If they're accountable for all the things, that's, I'm telling you, it's like someone trying to, you know, they called it, so I said it was more of an attempt of murder. By, and the reason I put United, the unemployment is because I have a fact sheet to show, and when I went under bankruptcy, it shows you are not supposed to, especially if you are qualified to negate, do those duties. Albertsons, in the interim, while I'm taking care of legal actions, I work for Albertsons, and I told them about safety and health issues. They tried to force me to do it, I ended up getting injured. I went to Olympic sports, so there, as I put in a statement saying what actually happened, they didn't deny. But you're trying to dismiss, and that's supposed to be a right for the plaintiff. Just while you're pausing there, I'll just let you know you're right at that five-minute mark. All right, thank you, sir. You can continue, or you can wait until the reply at your choice. The second one, the issues at hand, they were the default, they were a dismissal, and they were vexation. The vexation was put in a complaint that I did. Then after that, then they, I guess, countered and said vexation. It's more of a verbal attack or a strategy. A motion or interim for final relief until this issue is resolved or goes to trial, in which I'm happy to do if there's some special litigations, but I am a federal employee as well. And under those federal laws, they've all been broken, because I'm being treated differently. I'm being treated as a person without rights, my First Amendment, freedom of speech, which I put in my complaint. And then if they are objecting to that, where's your evidence to show that my evidence is false? Because my evidence would have to be false and prejudiced. If you look at the docket, you will see all the way down, exhibits, exhibits, exhibits, exhibits 10. If you look at my caseload, my, for defendants, it goes all the way, more than one to two, it goes from two to six for each incident. I mean, yeah, all the way to six. Then if you go to eight, you'll see that I wanted them to make sure, because the court, I mean, the court was saying, the clerks were saying, we sent it to them, but I've never received it in the mail, and I have. Even though I'm working to assist my veterans, I have never received it in the mail. I have it where the United States Postal Mail sends me every time I get mail, every time I get mail. So I have their mail in that folder right there. So I'll let them go ahead, but none of it is saying I deny, I admit, or I have no knowledge. I'll just remind you again, we have about two and a half. All right, Ms. Schenker. Good morning, Your Honors. This panel should affirm the bankruptcy court's orders of December 15, 2023, which are the final dismissal order and the vexatious litigant order. The standard of review for the final dismissal order is de noble. I will be talking about the final dismissal order during my time. Procedurally, the defendants moved for dismissal prior to attempting to answer Ms. Johnson's complaints. This was appropriate. Federal Rule of Bankruptcy Procedure 7012 requires that motions to dismiss for failure to state a claim must be brought before a party who files a responsive pleading. Judge Lynch had before him five motions to dismiss under Rule 12b-6 for failure to state a claim upon which relief can be granted. This means that the sufficiency of Ms. Johnson's complaint had to be examined before deciding whether or not she is entitled to judgment. Subsequently, dismissal under Rule 12b-6 can be based on either one, the lack of cognizable legal theory, or two, the fact that Ms. Johnson's complaint is not subject to insufficient facts to support a cognizable legal claim. All of Ms. Johnson's complaints are deficient on both counts. First, the cognizable legal theory. Where the challenge lies for Ms. Johnson is that after the bankruptcy case is concluded, the only two cognizable legal theories a bankruptcy court can adjudicate are one, under U.S.C. Section 727, whether specific acts served to deprive her of property for which her liability had been forgiven, or two, under 11 U.S.C. Section 525, whether a specific person discriminated against her solely because she had filed bankruptcy. As you review the record, the legal standard on dismissal is that Rule 12b-6 is designed to test the legal sufficiency of Ms. Johnson's claim. In doing so, allegations of material fact must be taken as true and construed in the light most favorable to the non-moving party. However, mere conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss. And even though we construe pro se pleadings liberally, even pro se pleadings must meet a minimum threshold of providing a defendant with evidence that it allegedly did wrong. Here, the complaint Ms. Johnson filed, even after numerous amendments, consists largely of an ever-expanding list of defendants and reproductions of some excerpts from some legal encyclopedias. Ms. Johnson quoted liberally from various statutes, including the Equal Opportunity Act, the Fair Credit Billing Act, the Fair Credit Reporting Act, and the Fair Credit Act. In doing so, she may have made some inferences, but she hasn't connected the dots between what the defendants did and how the discharge order was violated. And there is a significant difference between concluding or inferring that she was wrong and articulating facts that demonstrate what specific actions were taken. And that brings me to the second basis for dismissal, insufficient facts. While Ms. Johnson has certainly told us who she thinks wronged her, she hasn't articulated coherently what each actor did, how the actions adversely impacted her, and why those actions either A, contravene the release from liability she was granted, or B, were taken simply because she filed bankruptcy. For example, with respect to the state of Washington, the various complaints suggest Ms. Johnson's indignation over a wage deduction for her liability under a valid child support order. She submitted in her own pleadings, and we've cited to the record in the state's excerpts of record at 482 through 88, a child support order directing that she be responsible for paying child support for her three minor children. But under 11 U.S.C. Section 727B and 523A5, child support obligations cannot be discharged in bankruptcy. Therefore, any child support Ms. Johnson owed was not discharged, and any grievance she has about wage deductions for child support did not violate the discharge order. As to Albertsons, Equifax, and Amazon, Ms. Johnson brandishes suggestions of unfair practices, adverse actions, and discrimination, but suggestions alone, without stating facts that describe particular acts, do not give rise to any actionable claim in the bankruptcy court. As to Emerald Queen, Ms. Johnson references a 2019 accident in the parking lot, but an automobile accident four years after the bankruptcy closed has nothing to do with whether the discharge injunction was violated or whether someone discriminated against her because she filed bankruptcy. And the same holds true for the other 50 or so defendants. While she might have included some language about specific disputes she had with certain of the defendants, Ms. Johnson has only concluded that the defendants have violated laws. She has not described how they violated the laws. And to wrap up here, for what it is worth, I am not without sympathy for Ms. Johnson's situation. Unfortunately, however, the bankruptcy court does not have the jurisdiction to offer the relief she seeks. Ms. Johnson has had multiple opportunities to draw a straight line from a defendant to that defendant's act, and then to one of the two causes of action the bankruptcy court had the authority to adjudicate. And to date, she's failed to do this. Her conclusory statements are not, by themselves, sufficient to support a legal theory the bankruptcy court had jurisdiction to enforce. Judge Lynch properly dismissed Ms. Johnson's complaints, and this panel should affirm his final dismissal order. Do you have any questions for me? Ms. Brand? Well, thank you. I'd like to turn the floor over to my colleague. Morning, Your Honors. Jane Pearson and Paul Cinelli for Equifax Information Services. I'll be addressing the question of whether the bankruptcy court erred by declaring the appellant to be a vexatious litigant. And I'll, rather than recite those standards to Your Honors, who I know are quite familiar with them, I'm going to go straight to a discussion of the four considerations, the four requirements in order for a court to declare a litigant to be a litigious or a vexatious litigant. The first requirement merely requires notice reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Ms. Johnson had adequate notice and opportunity to oppose the entry of the pre-filing order. In the bankruptcy court, the show-cause order entered November 16, 2023, detailed Ms. Johnson's litigation history in the Western District of Washington, the Ninth Circuit Court of Appeals, and the United States Supreme Court. The bankruptcy court scheduled a hearing date and provided Ms. Johnson with 27 days within which to file a response. A live hearing was held in which Ms. Johnson appeared in person in the courtroom and argued her opposition to the proposed pre-filing order. The second requirement to entry of a pre-filing order is an adequate record for appellate review, which should include a list of all the cases and motions that led the court to conclude that a vexatious litigant order was needed. Here, the bankruptcy court clearly detailed the findings it relied on in making its decision. The show-cause order listed 48 of Ms. Johnson's filings by docket entry as of that date and then proceeded to list, by case name and number, nine additional litigation matters commenced by Ms. Johnson against several, if not all, of the defendants in the adversary proceeding. Third, before entering a pre-filing order, it is incumbent on the court to make substantive findings as to the frivolous or harassing nature of the litigant's actions. Frivolous filings must be inordinate in number. The courts must look at both the number and content of the filings as indicia of the frivolousness of the litigant's claims. Frivolous filings are, excuse me, as previously, as I discussed previously and set forth in the show-cause order, Judge Lynch entered detailed findings that Ms. Johnson made numerous frivolous filings, including Ms. Johnson used her filings to rehash and attempt to relitigate the same arguments. The number of Ms. Johnson's frivolous and harassing filings within the adversary proceeding was inordinate. By the time of the December 13 hearing, Ms. Johnson had made over 80 filings in the adversary proceeding, none of which provided factual, sufficient factual detail or stated a plausible claim. Ms. Johnson's claims are repetitive and not brought in good faith. The defendants have been faced with unnecessary burden, as has the defendant. The documents she has filed constitute improper harassment. Judge Lynch examined relevant circumstances as they appeared in the adversary proceeding, including Ms. Johnson's litigation history, her patterns of frivolous and harassing filings, and the ineffectiveness of alternative remedies to control her behavior. There was no need to consider avoiding depletion of her bankruptcy estate, because her Chapter 7 case, which was a non-asset case, was closed eight years ago, and the only creditor that's a defendant in the adversary proceeding is her ex-spouse. And fourth, finally, pre-filing restrictions must be narrowly tailored to the vexatious litigant's wrongful behavior. This Court must consider whether the Bankruptcy Court's pre-filing order was necessary to prevent continuing vexatious conduct, and whether the specific restrictions were narrowly tailored. As the Bankruptcy Court noted at the December 13 hearing, dismissals with prejudice have not been effective in deterring Ms. Johnson's behavior. Assessing monetary sanctions will not be effective because she lacks financial resources. Judge Lynch narrowly tailored the pre-filing restrictions. The pre-filing restrictions only apply to cases that have been dismissed with prejudice in the Western District of Washington Bankruptcy Court, or to any new case that includes any in that court that includes any of the defendants listed in the adversary proceeding and relates to the same claims or issues already litigated. The order does not apply to any effort to move for reconsideration or appeal. The order does not apply to a complaint that the Court determines makes new claims not previously dismissed, that there is not a merits review involved in the pre-filing order, and Ms. Johnson may petition the Court to lift the order. In conclusion, this Court should affirm the pre-filing order entered December 15, 2023, because the Bankruptcy Court did not abuse its discretion by entering it. Thank you. Ms. Johnson, you have roughly slightly under two and a half minutes if you want to reply to the arguments. As a court record, my name is Brenda Rembert, and I've given a letter stating that there was an error within the court dockets, and I made that in the United States District Court. I also have Pierce County, who I was a former employee with, but I terminated my employment with them, that states my name is Pierce County, and I made that in the United States District Court in January of 2018. The allegations of timely response, the Court gave them certain dates to respond. All defendants did not respond. They cannot, I mean, in a timely manner. If I was supposed to do that, if I were to do that, I would be thrown, my case would have been thrown out for statute. I mean, for not responding timely, as the other, I forget her name, I do apologize, was stating. Also, the false answers for defamation. The defamation is not the grievances, she said, the plaintiffs weren't on there. It says in an adversary proceeding, if you are being prevented from employment. This stopped me from being employed. And that's the only reason I actually put the unemployment on there as a, if you look at the cases, and I can bring that for trial. Any case proceeding, when you're going to trial, you only put the minimum facts so you can bring the conclusion before a jury. I put in DK-9, I mean, DK-98, each incident that occurred, which was fraudulent, because I worked, but I didn't get compensation. I got injured, I didn't get compensation. These are having to do with employment issues. Pinnage, a form of slavery. These discriminatory actions, I got 19 seconds. You're actually over, so I'll give you just a moment to make a final sentence. I put that they did not, it's in writing, it would be against the court rules to give them more time. They went ahead and put in dismissals when they arrived. Their statements are unfounded. They refused to answer the complaints, and that is hostile. They are under the same. It says 52. It's counting up, you're going over. We're in overtime. Thank you both for your arguments. The matter will be submitted, and we will endeavor to get a decision out as quickly as possible.
judges: Brand, Spraker, Gan